UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT SCALPH, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>TIMBER PRODUCTS TRUCKING, LLC, et al.,<br><br>　　　　Defendants. | Case No. 24-cv-02614-JST<br><br>**ORDER RE DISCOVERY LETTERS**<br><br>Re: ECF No. 47, 50, 54 |

Before the Court are two discovery letters. ECF Nos. 47, 50. In the first, Plaintiffs Scott and Angela Scalph seek to quash subpoenas issued by Defendants Timber Products Trucking, LLC, Timber Products Trucking, Inc., and Josef Woolen. ECF No. 47. In the second, Defendants seek to reopen discovery and conduct independent medical examinations ("IMEs") of Scott Scalph. ECF No. 50. The Court heard argument on the discovery letters on July 24, 2025. As set forth below, the Court will grant Plaintiffs' request to quash the subpoenas and deny Defendants' request to reopen discovery and conduct IMEs.

I. **BACKGROUND**

Scott Scalph was injured in a collision between his automobile and a semi-truck driven by Woolen. The Scalphs originally filed suit in state court on November 9, 2023. *See* ECF No. 2-1, Compl. Scott Scalph alleged physical injuries to his "head, brain, neck, shoulders, back, chest, arms, hips, pelvis, buttocks, legs, knees, and feet, and internally, including but not limited to, internal bleeding and hematoma, and immune system, as well as mental and emotional injuries[.]" *Id.* ¶ 12(A).

While proceeding in state court, Defendants issued a demand for the production of "[a]ll medical reports, medical records, x-ray reports, emergency room notes, and other treatment

1   records from any HEALTHCARE PROVIDER involved in the examination or treatment for
2   YOUR [Scott Scalph's] injuries." ECF No. 54-1, Declaration of Misak Chanchikyan
3   ("Chanchikyan Decl.") ¶ 2, Ex. B.  The Scalphs responded on April 23, 2024 by sharing the
4   "medical records and billing in his [Scott Scalph's] possession[.]" *Id.*

5   On May 1, 2024, Defendants removed the action to this Court. ECF No. 1, Removal. To
6   establish diversity jurisdiction, Defendants cited the medical records produced by the Scalphs, as
7   well as a written statement "alleging damages in excess of 10 million dollars." ECF No. 2,
8   Declaration of James Molinelli ¶¶ 5, 6.

9   On July 26, 2024, the parties submitted their initial joint case management statement. ECF
10  No. 18, Initial CMC Statement. Defendants stated, in relevant part: "The nature and extent of Mr.
11  Scalph's injuries, relative to his pre-existing conditions are a subject of further investigation and
12  discovery," and, "Defendants anticipate subpoenaing medical and income records and may request
13  more than one Independent Medical Exam." *Id.* at 2:6-7, 4:2-3.

14  The same day, Plaintiffs served their initial disclosures pursuant to Rule 26. Chanchikyan
15  Decl. ¶ 4, Ex. C. The disclosures identified 27 medical professionals who provided Scott Scalph
16  with treatment following the collision. *See id.* The address and telephone number were listed as
17  "Unknown at this time" for all 27 providers.

18  On May 1, 2025, Plaintiffs supplemented their disclosures and identified an additional 12
19  medical providers. Chanchikyan Decl. ¶ 6, Ex. E. The newly disclosed providers included Dr.
20  Greer Waldrop and Scott Scalph's primary care physician, Dr. Anand Magoon, but again stated
21  that all providers' addresses and telephone numbers were "[u]nknown at this time." *See id.* at 8-9.
22  Plaintiffs attached treatment notes to the disclosures. *Id.* at 12. Dr. Waldrop's treatment notes
23  reflect that she diagnosed Scott Scalph with multiple sclerosis in December 2024. Chanchikyan
24  Decl. ¶ 6. The disclosures also included a report from Sutter Health that contained the following
25  language: "On 12/3/24 was diagnosed with Multiple Sclerosis (MS), seen at UCSF for further
26  diagnosis. Subsequently has been initiating infusion for MS in Modesto, pending additional
27  improvement in the coming week (Ocreves)." *Id.* On May 30, 2025, Plaintiffs deposed Dr.
28  Waldrop. *Id.* Counsel for Defendants explored Scalph's MS diagnosis at Dr. Waldrop's

2

1  deposition. ECF No. 54-1 at 87.

2  On June 6, 2025, Plaintiffs served a second set of supplemental disclosures. Chanchikyan
3  Decl. ¶ 7, Ex. F. This final set provided addresses and telephone numbers for the medical
4  providers. *See id.* It was accompanied by updated medical records.

5  Fact discovery closed on June 10, 2025. ECF No. 21.

6  Shortly before and after the discovery deadline, Defendants issued at least 45 subpoenas to
7  Scott Scalph's medical providers. Defendants issued 30 of these subpoenas on June 9, the day
8  before discovery closed; 14 on June 20, ten days after discovery closed; and at least one on each of
9  June 24 and June 27, two weeks after discovery closed. The subpoenas called for production after
10 the discovery cut-off.

11 On July 21, 2025, Defendants noticed three IMEs for Scott Scalph. ECF Nos. 56-4, 56-5,
12 56-7. The proposed IMEs were to take place in September 2025, with two scheduled to occur
13 after the close of expert discovery.

14 Expert discovery will close on September 12, 2025. ECF No. 41.

15 **II.    LEGAL STANDARD**

16 Rule 16 permits a trial court to modify a scheduling order upon a showing of good cause if
17 a deadline "cannot reasonably be met despite the diligence of the party seeking the extension."
18 Fed. R. Civ. P 16(b)(4), Advisory Committee's Notes (1983 Amendment). The good cause
19 standard for reopening discovery "primarily considers the diligence of the party seeking the
20 amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).
21 "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of
22 relief." *Id.* "If the party seeking the modification [to the scheduling order] 'was not diligent, the
23 inquiry should end' and the motion to modify should not be granted." *Zivkovic v. So. California*
24 *Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) (quoting *Johnson*, 975 F.3d at 609).

25 Under Civil Local Rule 37-3, "[d]iscovery requests that call for responses or depositions
26 after the applicable discovery cut-off are not enforceable, except by order of the Court for good
27 cause shown." Civ. L.R. 37-3. No motions relating to discovery may be filed more than seven
28 days after the respective discovery cut-off. *Id.*

### III. ANALYSIS

Defendants have not established good cause for their failure to serve the subpoenas at issue, conduct an IME, or engage in other affirmative discovery prior to the discovery cut-off. *See* Local Rule 37-3. Nor have they established good cause for their failure to bring their discovery disputes to the Court within seven days after the close of fact discovery. *Id.*

Defendants argue that their delay should be excused because Plaintiffs waited until May 2025 to disclose Scott Scalph's multiple sclerosis diagnosis. They also contend that the discovery they seek is essential to the preparation of a defense. Neither of these arguments helps Defendants. First, whether Plaintiffs violated their disclosure obligations under Rule 26(e)(1)(A) is not before the Court, and even if it were, Defendants were required to bring a motion to compel by June 17, 2025; the parties' joint letter brief was filed July 7, 2025. ECF No. 47. Second, the Court assumes for purposes of this motion that the discovery at issue is relevant. That does not, however, establish either Defendants' diligence or any good cause for not seeking the discovery earlier.

In fact, Defendants did not act diligently in conducting discovery before the fact discovery deadline despite knowledge of the issues in the case well before the cut-off date. They did not issue any interrogatories, requests for production, requests for admission, or requests to conduct an IME after removal to federal court, notwithstanding their stated intent to do so. Instead, despite receiving knowledge of Scalph's 27 medical providers in July 2024, Defendants waited until one day before the close of discovery to issue subpoenas to those providers. This lack of diligence is fatal to a finding of good cause. *Cf. Chang v. Cashman*, 723 F. Supp. 3d 772, 780 (N.D. Cal. 2024) (holding decision to wait until after amendment deadline to move for leave to amend based upon information knowable before deadline "cuts against a finding of good cause" to modify scheduling order); *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 672 (C.D. Cal. 2003) (noting that "[n]o party seriously disputes" plaintiff's diligence where plaintiff "propounded no discovery, did not designate experts, and failed to respond to [defendant's] discovery requests in a timely fashion.").

Nor is the Court moved by Defendants' argument that their untimely discovery was

1  required to counter Plaintiffs' allegedly late supplemental disclosures.  Plaintiffs served a

2  supplemental provider list and accompanying medical records six weeks before the close of fact

3  discovery.  Defendants had six weeks in which to act on that information, request additional time,

4  or move the Court for an enlargement of the discovery deadlines, but did not do so.  Notably,

5  defense counsel represented during the hearing on these discovery letters that he first learned of

6  Scalph's multiple sclerosis diagnosis on May 30, during Dr. Waldrop's deposition—almost one

7  month after receipt of Dr. Waldrop's notes.  This suggests that counsel may not even have

8  adequately reviewed the materials provided by Plaintiffs in preparation for Dr. Waldrop's

9  deposition.  *See Johnson*, 975 F.3d at 610 (holding failure of counsel to "pay attention to the

10 [discovery and pleading] responses they received" is "precisely the kind of case management that

11 Rule 16 is designed to eliminate.").

12        Nor have Defendants established good cause to conduct IMEs at this late stage.

13 Defendants anticipated requesting IMEs in July 2024 but made no efforts to do so until after the

14 close of fact discovery.  This year of inactivity cannot reflect diligence.  *See Kamal v. Eden*

15 *Creamery, LLC*, 88 F.4th 1268, 1277-78 (9th Cir. 2023) (finding lack of diligence where plaintiffs

16 failed to act on information for eight months).  Defendants propose that IMEs be conducted by

17 four providers, only one of which specializes in multiple sclerosis.  Defendants have proffered no

18 explanation for their delay in seeking IMEs by the other three providers.  The nature and scope

19 Scott Scalph's injuries were clearly at issue in this case from its inception.  *See id.* at 1278

20 (affirming denial of motion to amend scheduling order where issue was "clear from the outset" of

21 the case).  Defendants could have requested, but did not request, discovery into those injuries

22 before discovery closed.

23        To the extent that six weeks was insufficient to schedule an IME with a specialist in

24 multiple sclerosis, Defendants should have moved for relief by June 17 at the latest, seven days

25 after the close of fact discovery.  *See* Civ. L.R. 37-3.  Instead, they waited until July 10.

26 Defendants offer the Court no basis not to enforce the Court's local rules.  *See Eagle Eyes Traffic*

27 *Indus. USA Holding LLC v. E-Go Bike LLC*, No. 21CV07097TLTTSH, 2023 WL 6629802, at *1

28 (N.D. Cal. Oct. 10, 2023) ("Untimely motions related to fact discovery are not permitted under

1  Local Rule 37-3.").

## CONCLUSION

For the reasons set forth above, the Court finds that Defendants were not diligent and have not established good cause to conduct discovery after the fact discovery cut-off. The Court GRANTS Plaintiffs' request to quash the untimely subpoenas and DENIES Defendants' request to reopen fact discovery and conduct IMEs.

**IT IS SO ORDERED.**

Dated:  July 28, 2025



JON S. TIGAR
United States District Judge